GEORGE VS UNITED STATES.

Opinion delivered October 27, 1905.

(89 S. W. Rep. 1121).

1. *Criminal Law—Instruction—Evidence.*

> In a trial for larceny an instruction, that if the jury find from the evidence that there was others than the defendant interested in the larceny it would make no difference that the other parties were not indicted and on trial, is prejudicial to the defendant when there is no evidence in the record to sustain it, unless the inference is drawn that every one who associated with defendant was a thief.

2. *Same—Evidence.*

> The defense on a trial for larceny was that defendant represented the owner in obtaining the property claimed to have been stolen from the person in possession thereof. Defendant attempted to offer testimony to the effect that the owner stated to defendant that he would represent him in procuring the horse. *Held;* Exclusion of this evidence was reversible error.

3. *Larceny—Excessive Punishment, What is.*

> A ten years sentence for the larceny of a $40 horse is excessive even though it is not improbable that the defendant is a horse thief.

Appeal from the United States Court for the Central District of the Indian Territory; before Justice T. C. Humphrey, October 10, 1904.

On February 10, 1904, the grand jury of the Central district, sitting at Atoka, I. T., returned into court an indictment for larceny against the appellant. On February 10, 1904, appellant waived arraignment and pleaded not guilty. On February 16, 1904, the case of the United States against defendant (appellant) was continued by the government. On October 10, 1904, the case was tried before a jury, who returned the following verdict: "We, the jury, duly impaneled and sworn in the above-entitled action, do find from the law and the evidence the within named defendant, Robert George, guilty in manner and form as charged in the within indictment. Henry J. Bond, Foreman." On October 18, 1904, defendant (appellant) filed his motion for new trial, and on October 20, 1904, the motion for new trial was heard and overruled by the court, to which defendant excepted. On October 22, 1904, defendant (appellant) was sentenced to the penitentiary for a term of 10 years, to which defendant (appellant) excepted, and prayed an appeal to this court.

*J. H. Chambers* and *J. G. Ralls*, for appellant.

*J. H. Wilkins*, U. S. Atty.

TOWNSEND, J. (after stating the facts). The appellant has filed 20 assignments of error. The first assignment is that the verdict is contrary to law. Second. That it is contrary to the evidence. Third. That the verdict is not supported by the evidence. Fourth. That the court refused to instruct the jury to find defendant not guilty. The fifth is as follows: "The court erred in instructing the jury as follows: 'If the jury find from the evidence that there was one, two, or three or more or any number interested in the larceny of this horse and the defendant was one of them, why it would make no difference that the other parties were not indicted

and here on trial.' " The sixth is as follows: "The court erred in instructing the jury as follows: 'Now, gentlemen of the jury, if you find beyond a reasonable doubt from the testimony in this case that the defendant, Robert George, at the time alleged in the indictment, or about that time within three years next before the finding of the indictment, conspired with others or combined with others and got up any kind of a writing, an order or affidavit, and presented the party who had possession of this horse, claiming that was his horse, and put in this proof that it was his horse and by means of the papers shown by the defendant that Tate went to the field and brought the horse up to him and he put a rope around the horse's neck, claiming the horse was his own, and if you find he did this, I instruct that you find him guilty of the larceny of the horse.' " The seventh is as follows: "The court erred in instructing the jury as follows: 'Now right on that, I want to say again, if you find from the testimony, if you believe from the testimony that witness Tate voluntarily went and got the horse and he was not induced to do this by the representation of the defendant, then his going and getting it would not be the act of the defendant in going and getting it. Under that state of facts it would be necessary for the defendant to take charge of the horse and move it, and if you find from the testimony that he put his rope on the horse and led him one step that would satisfy the part of the law called asportation. The eighth is as follows: "The court erred in instructing the jury as follows: 'If Tate was induced to go and get the horse, if this man sent Tate after it by showing the papers and claiming he was the owner of it and Tate went and got the horse and brought it to him, then that is sufficient asportation of taking and carrying the horse, but, if the evidence does not satisfy beyond a reasonable doubt that Tate was so induced to do this by the representation of this defendant and the producing this order or affidavit,

then in order to perfect the larceny it would be necessary that after this he, the defendant, took charge of the horse and the horse was moved.'" The ninth is as follows: "The court erred in instructing the jury as follows: 'If the testimony of the witnesses was that he, the defendant, led the horse before he was arrested, if you believe beyond a reasonable doubt that that is true, that is a sufficient carrying away of the horse to satisfy the part of the law that we call asportation, regardless of going after the horse and bringing it.'" The tenth assignment was the instruction of the court to weigh defendant's testimony like that of any other witness. The eleventh assignment was the refusal of the court to instruct the jury what the false representation meant, as used by the court. The twelfth assignment is as follows: "The court erred in refusing to instruct the jury, as requested by the defendant, as follows: 'Larceny, among other things, consists of the unlawful taking without the consent of the owner, and the witness Tate, in this case, knew the horse did not belong to the defendant, and under the law Tate was bailee of the owner of the horse, and if he turned the horse over to the defendant, at the time not believing the defendant was the owner of the horse but for the purpose of letting the posse man have an opportunity to arrest the defendant, then the defendant would not be guilty of the crime of larceny.'" The thirteenth was the overruling defendant's objection to the admission of evidence. The fourteenth is as follows: "The court erred in sustaining the objections of the prosecution to evidence offered by the defendant and in refusing to permit the evidence to go to the jury, to which action of the court the defendant then and there and in open court duly excepted." The fifteenth was the discovery of new, competent, and material evidence since the trial. Sixteenth. Overruling defendant's motion for new trial. The seventeenth is as follows: "The court erred in assessing the defendant's punishment at 10 years in

the penitentiary; such punishment being cruel, unusual, and excessive." The eighteenth is as follows: "The court erred in sustaining the objections of the prosecution to the introduction of the evidence of J. L. Knapp offered by the defendant, in this particular: The witness was asked by the defendant's attorney, after he had testified about J. T. Turner being in the vicinity of where George is shown to have lived, this question: Q. 'Do you know anything about J. T. Turner losing a horse?' The court sustained the objection of the prosecution and the defendant excepted. Afterwards the same witness was asked this question: 'Do you know whether or not Turner had heard of the horse at Tate's?' The prosecution objected to the question, and the court made this statement: 'I under-stand that they want to show that this man went and informed the defendant that there was a horse down here that belonged to Turner. I understand, Mr. Knapp, that you were asked if you conveyed certain information in regard to the horse stated to belong to Turner, and you stated that you did.' Witness Knapp replied: 'Yes, sir.' Then the court proceeded as follows: 'The defendant can testify to that if he wants to'— to which ruling and remark the defendant excepted." The nineteenth is as follows: "The court erred in stating to the jury, in passing upon the objection of the prosecution, as followt: 'I understand that they want to show that this man went and informed the defendant that there was a horse down there that belonged to Turner. I understand, Mr. Knapp, that you were asked if you conveyed certain information in regard to the horse that belonged to Turner and you stated that you did.' Mr. Knapp answered: 'Yes, sir.' Thereupon the court continued: 'The defendant can testify to that if he wants to'—to which remark of the court the defendant excepted." And the twentieth is as follows: "The court erred in sustaining the objections of the prosecution to the witness John H. Turner, a witness on behalf of the defendant, in this particular, to wit:

The witness had testified that he was present at a place where
J. T. Turner had camped and that he had seen the witness
Knapp and the defendant and some other parties at Turner's
place and had stated that he had seen the paper which was an
affidavit that was introduced in evidence by the prosecution
and stated that this man Turner is a nephew of his, that he had
lost a horse and was to give the defendant $2.50 to go and get
him. He had further stated that the defendant went and
came back and told Turner he could not get the horse unless
he would prove him, and that Turner and a fellow went away
and came back Sunday evening and had a paper. And that
the paper was turned over to the defendant. He was then
asked by the defendant this question: Q. 'When he was
first talking to George about getting the horse, what directions
did he give George about getting the horse?' The court on
his own motion prevented the defendant from answering the
question, and the defendant excepted. Then the witness was
asked by the defendant this question: Q. 'I will ask you if
anything was said there or any directions given to Turner by
George in regard to the fact that George should represent himself
as Turner in going after the horse?' The court on his own
motion refused to permit the witness to answer the question,
and the defendant excepted. Again, at the conclusion of
Turner's evidence the defendant offered to prove by the witness
that he heard Turner state to the defendant who he should
represent himself to be in going after the horse. The court
refused to permit the question, and the defendant excepted."

The appellant discusses the first three assignments
together, and it is certainly apparent, from the testimony
disclosed by the record, that this case contains some peculiar
characteristics. It is disclosed: That the animal, which
defendant is charged with stealing, was in the possession of one
A. P. Tate, who had taken the horse up as an estray, and had

posted notices of that fact. That subsequently the defendant came and claimed the horse as his property, and represented himself to be J. T. Turner; and after arrest defendant claimed that said J. T. Turner employed him to go and get the horse, claiming that the horse was his (Turner's) horse. That Turner himself was sick, and instructed him to represent himself as J. T. Turner. That Tate refused to surrender the horse without proof, and defendant returned to Turner and informed him of the situation. That Turner made an affidavit to his ownership of the horse, which was joined in by one Wright, and gave same to defendant and instructed him to return and get the horse, and state again that he was Turner. Defendant returned to Tate, exhibited the affidavit, and Tate went to the field and brought the horse to the house, and told defendant there was the horse. But in the meantime Tate had either directly or indirectly notified the marshal, and, on the day previous to defendant's return to get the horse, some one swore out a warrant charging the defendant with the larceny of the horse, which was yet in Tate's possession. That one Myers, who was working for the marshal, was present when defendant arrived to get the horse, waiting for defendant to arrive and commit a larceny, so that he could arrest him under a warrant that had been sworn out the day before, and, when that particular time arrived, the testimony of Tate is as follows: "Q. You understood he was to be there, and if George took the horse he would take him? A. I didn't know what the understanding was. Q. Well, did he do that? A. Yes, sir. Q. When you turned the horse over to George you did not think it was his? A. No, sir; I did not. Q. You turned it over to him so the posse man could arrest him? A. Yes, sir; I suppose so. Q. The marshal instructed you to turn the horse over, did he, so he could arrest him? A. Well, the marshal did not. Q. Well, others did? A. Yes, sir. Q.

Then, if I understand you, Mr. Tate, there was an understanding between yourself and the parties there that the marshals were to be there, and, when George came back after the horse, you would turn it over to him and he was to be arrested there for taking the horse, that was why you turned the horse over to him? A. Yes, sir. Q. It was not because of anything he said himself? A. No, sir. Q. You did not go on what he said himself? A. No, sir." It, at least, is very evident that the marshal was ready for this larceny, and the horse was turned over to the defendant by Tate so defendant could commit larceny in the presence of Tate and the marshal.

But the question whether the defendant committed larceny or not, under the instructions of the court, becomes one of much interest at this point. The court instructed the jury that, if Tate did not go to the field by reason of the representations of defendant, but did so voluntarily, then his going after this horse would not be the act of the defendant, and "under that state of facts it would be necessary for the defendant to take charge of the horse and move it, and, if you find from the testimony that he put his rope on the horse and led him one step, that would satisfy the part of the law called asportation." Hence, under this view, was the horse moved so that larceny could be committed? The defendant denies it, and Myers, the posse man, swore before the commission that he was not moved before he arrested the defendant, but changed his evidence at the trial in the lower court; and Tate, the only other witness on that point, testified as follows: "Q. Well, just as soon as he got his rope on him the deputy threw down on him? A. I can't say. Q. It was done quick? A. It was not very long. Q. When you walked behind the horse, how close did you remain to the horse? A. I was behind him pulling burrs out of his tail. Q. You were pulling burrs out of his tail? A. Yes, sir. Q. Was the defendant putting

his rope on him? A. Yes, sir. Q. And put it on while you were pulling burrs out of his tail? A. Yes, sir. Q. Was the defendant putting his rope on him? A. Yes, sir. Q. And while you were still pulling burrs he was arrested? A. Yes, sir. Q. The horse was not moved from where you commenced pulling burrs until the defendant was arrested? A. No, sir, not that I know of. Q. Well, he did not move, did he? A. I cannot say that he did or did not. Q. Your recollection is that he did not move? A. Yes, sir. Q. The defendant was still standing there? A. Yes, sir. Q. Had he tied the rope on? A. Yes, sir. Q. When he tied the rope on the horse's neck what did he do? A. Shortened up the rope. Q. Then what happened? A. He threw down on him. Q. He was thrown down on the next time you saw him? A. Yes, sir. Q. You understood this was all going to happen? A. I was satisfied it was."

Under the fifth assignment, the instruction of the court states that, if the jury should find one, two, or three or more were interested in the larceny, and defendant was one of them, it would make no difference that the others were not indicted and on trial. We find no evidence in the record that authorizes such an instruction, unless we are to draw the inference that every one who associated with defendant was a thief. We think this instruction was prejudicial to the defendant.

Under the nineteenth and twentieth assignments the defendant was not permitted to prove by Knapp and John H. Turner defendant's claim that he was simply representing J. T. Turner, by conversations with J. T. Turner, in the presence of these witnesses, although the court announced "that defendant can testify to that if he wants to." Defendant insists he had a right to this testimony to show that he was acting in good faith for J. T. Turner. We are clearly of the opinion

that these witnesses could testify to that conversation; and, while it is not improbable that this defendant is a horse thief, 10 years in the penitentiary for stealing a $40 horse, especially when the marshal and Tate were waiting for him to commit the larceny, so as to arrest him, we think is excessive.

For the errors suggested we are of the opinion that the case should be reversed, and the defendant be granted a new trial.

Reversed and remanded.